**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

FEB 2 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| MORRIS ONYEWUCHI ) | |
| 1014 CHESTERFIELD PLACE ) | |
| MARIETTA, GEORGIA 30064 ) | |
| ▬▬▬▬▬▬▬ ) | |
| HOME: (770) 795-3288 ) | |
| Vs. ) | **CIVIL ACTION NO.** |
| ) | |
| ) | |
| HONORABLE EMILIO T. GONZALEZ ) | **JURY DEMAND.** |
| DIRECTOR, USCIS, ) | |
| IN HIS OFFICIAL CAPACITY | |
| 20 MASSACHUSSETTES AVENUE | Case: 1:08-cv-00360 |
| WASHINGTON, DC 20529 | Assigned To : Urbina, Ricardo M. |
| | Assign. Date : 2/29/2008 |
| | Description: Employ. Discrim. |

## ORIGINAL COMPLAINT OF RACE AND NATIONAL ORIGIN DISCRIMINATION

## NATURE AND BACKGROUND OF THE CASE: DISPARATE TREATMENT RACE AND NATIONAL ORIGIN DISCRIMINATION

1.    This compliant is filed by Morris Onyewuchi ("Plaintiff" or "Mr. Onyewuchi"), an African-American, of Nigerian origin. He petitions this court in this action to obtain full and complete relief and to redress the unlawful employment practices and violation of Title VII of the Civil Rights Act of 1964, as amended, described in this Complaint.

2.    Mr. Onyewuchi is currently employed within the Office of Principal Legal Advisor ("OPLA"), Immigration and Customs Enforcement ("USICE"), Department of Homeland Security ("DHS"). Prior to his civilian employment, Mr. Onyewuchi served two tours in the United States Army both as an enlisted soldier and an

1

officer.    He was honorably discharged, twice, after attaining the ranks of Sergeant (E-5) as an enlisted soldier and Captain (O-3) as a commissioned officer.

3.    Mr. Onyewuchi joined the Department of Justice, Immigration and Naturalization Service ("INS"), as an immigration attorney, through the U.S. Attorney General's Honors Program in September 2002. However, in 2003, the INS was abolished and its legal program was reconfigured into the newly created Department of Homeland Security. Two distinct agencies, U.S. Immigration and Customs Enforcement ("USICE") and U.S. Immigration and Citizenship Services ("USCIS") emerged from the INS.

4.    Attorneys from the abolished INS, including Plaintiff, were placed into the two newly created agencies, USCIS or USICE, within the Department of Homeland Security, without any input from these attorneys regarding their preferences on which of the two new agencies they wished to be assigned. This is crucial because of the more favorable employment benefits available at USCIS. For example, in addition to the student loan repayment opportunity available at USCIS only, the USCIS attorney journeyman positions were elevated to, and capped at, GS-15 while USICE attorney journeyman positions remained at GS-14, as they were under INS, for non-management attorneys.

5.    Based on information and good faith belief, a disproportionate number of White attorneys were non-competitively selected for the more favorable USCIS GS-15 positions. Mr. Onyewuchi was assigned to USICE, without any input as to

2

whether he preferred to work for USICE or USCIS or any opportunity to compete for the GS-15 positions.

6.      Although Mr. Onyewuchi was placed with USICE in the newly created Department of Homeland Security, after INS was abolished, his duties as an immigration attorney remained the same.

7.      On or about May 6, 2004, USCIS announced a vacancy, via Agency internal e-mail system, for an experienced attorney position (Associate Counsel), GS-12 to GS-15, in Dallas, Texas.

8.      Applications were solicited from any attorney who wished to transfer at personal expense to Dallas.    The vacancy announcement did not restrict applications from the Dallas local commuter area only.

9.      Mr. Onyewuchi reviewed the vacancy announcement and applied for the position immediately, because he was already performing the immigration attorney duties stated in the vacancy announcement as the focus of the position.

10.     On May 20, 2004, Ms. Judith Patterson ("Patterson"), who was one of two the recommending officials for the position, called Mr. Onyewuchi at his home in Atlanta, Georgia, to be available for an interview the next day, May 21, 2004, in Dallas, Texas.

11.     Mr. Onyewuchi informed Ms. Patterson that he would not be able to fly out to Texas the next day, May 21, 2004, because he already had a child custody hearing, to obtain the custody of his children, on the same date.

12.    Mr. Onyewuchi was ultimately interviewed by telephone on May 21, 2004, after he returned from his child custody hearing.

13.    On or about June 10, 2004, Ms. Patterson notified Mr. Onyewuchi, via e-mail, that he was not selected for the position.

14.    Ms. Patterson provided a list of the criteria she considered in making her selection in the non-selection e-mail she sent to Mr. Onyewuchi. Ms. Patterson's list included ties or familiarity with the Dallas area as a criterion considered in the selection.

15.    Mr. Onyewuchi discovered from the non-selection e-mail that he was one of the six best qualified candidates, out of 120 applicants, who were interviewed for the position.

16.    Mr. Onyewuchi later learned from documents disclosed during the EEO investigation process that three White attorneys were recommended for the position.

17.    Mr. Onyewuchi further learned that he was not even recommended despite his superior qualifications.

18.    Mr. Onyewuchi made enquiries to determine the reason for his non-selection and whether he was even recommended.

19.    Ms. Patterson initially indicated that she would respond to Mr. Onyewuchi's enquiries after USCIS has published the name of the selectee.

20.    However, on or about June 24, 2004, after the selectee's name was published by USCIS Headquarters, Ms. Patterson reneged on her promise to

4

respond to Mr. Onyewuchi's enquiries.  She informed Mr. Onyewuchi that she would not respond to Mr. Onyewuchi's enquiries due to deliberative process.

21.     Mr. Onyewuchi timely initiated his EEO compliant on July 22, 2004.

22.     Mr. Onyewuchi learned through the documents disclosed during the EEO investigation process that the White applicant who was ultimately selected for the position was initially pre-selected on or about May 18, 2004, two days before Ms. Patterson called Mr. Onyewuchi to schedule him for interview.

23.     Mr. Onyewuchi further learned that the co-recommending official for the position, Ms. Catherine Muhletaler ("Ms. Muhletaler"), complained to USCIS Headquarters, via e-mail, regarding Ms. Patterson's improper pre-selection of the ultimate selectee.

24.     Evidence would show that USCIS Headquarters instructed that interviews be conducted; however, it failed to take any steps to supervise the selection process.

25.     Evidence would show that Ms. Patterson, having been instructed to conduct interviews, usurped the selection process and embarked on the manipulation of the entire selection process to ensure that her previously pre-selected candidate would emerge as the ultimate selectee.

26.     Evidence would show that Ms. Patterson manipulated the selection process to ensure that, should her pre-selected candidate drop out or was rejected, only a White applicant would stand the chance of being selected.

27.     Mr. Onyewuchi asserts that Ms. Patterson did not want him to be selected for the position because of his race and national origin.

28.    Mr. Onyewuchi learned through the EEO investigator's report that Ms. Patterson made improper pre-employment enquiries regarding his national origin and source of citizenship, when she called Mr. Onyewuchi's supervisor, Chief Counsel Terry C. Bird (Rtd.), for recommendation. Evidence will show that Mr. Terry Bird gave Mr. Onyewuchi stellar recommendation for the position, which the recommending officials ignored.

29.    **Mr. Onyewuchi learned through the EEO investigator's report that Ms. Patterson recorded his source of citizenship and National Origin ("natz'd from Nigeria") on the selection material. This recording of Plaintiff's national origin and source of citizenship presumes that national origin was a factor in his non-selection. Evidence would should that Defendant unlawfully obtained this information during pre-employment enquiries.**

30.    Mr. Onyewuchi further learned that one of the three White applicants who were moved forward as the finalists was determined by the Agency to not be a good fit for the position because she lacked the required skills set, yet she was recommended and Mr. Onyewuchi who was already performing the required duties for the position was not even recommended.

31.    **Mr. Onyewuchi further learned that the recommending officials recorded derogatory remarks on his selection material regarding his predominantly Black law school, but nothing derogatory was remarked about the predominantly White schools. This derogatory remark directed against a historically Black law school, combined with gross understating**

**of Plaintiff's academic achievement at the same law school, evidences discriminatory animus based on race.**

32.    Mr. Onyewuchi learned that despite the fact that he graduated at the top of his law school class (#1/191), he was awarded the worst possible score for law school academic credentials in the selection score sheet.

33.    Mr. Onyewuchi learned that one of the recommended White applicants who graduated at the fiftieth percentile of her law school class received a higher score than Mr. Onyewuchi for law school academic credentials.  Apparently, in the eyes of the recommending officials, graduating number one from a historically Black law school was worthless when compared to graduating at the fiftieth percentile from a predominantly White law school.

34.    Mr. Onyewuchi further learned that one of the Agency officials, deliberately and methodically, deleted the e-mail messages discussing the improper pre-selection of the White applicant who was the ultimate selectee for the position, before disclosing them to the EEO investigator.  Mr. Onyewuchi asserts that this gross misconduct was perpetrated to hide the truth about the improper pre-selection and the unlawfully manipulated selection process.

35.    The above facts, among others, to be adduced at trial, are the bases for Mr. Onyewuchi's law suit to vindicate his rights under Title VII of the Civil Rights of 1964, because his non-selection for the position of USCIS Associate Counsel was based on unlawful race and national origin discrimination.

36.    Mr. Onyewuchi asserts that the selection process was unfairly administered and grossly manipulated to favor White applicants, to the detriment of Mr. Onyewuchi.

## JURISDICTION AND VENUE

37.    The jurisdiction of this court is invoked under §§ 717(c) and 706(f) of Title VII, 42 U.S.C. §§ 2000e-16(c) and 5(f), and 28 U.S.C. §§ 1331 and 1343 (4). Venue in this Court is proper under 42 U.S.C. § 2000e-5(f).

## PARTIES

38.    Plaintiff, Mr. Morris Onyewuchi, is an African-American male citizen of the United States, of Nigerian origin, and resident of Georgia.    The Plaintiff is currently employed as an Assistant Chief Counsel with USICE in Atlanta, Georgia.  As such, Plaintiff is a federal employee within the meaning of §§ 701(f) and 717(a) of Title VII, 42 U.S.C. § 2000e-(f) and § 2000e-(16) (a).

39.    The Defendant is Honorable Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services ("USCIS"). He is being sued in his official capacity as head of the Agency. As such, he is amenable to suit as provided under § 717(c) of Title VII, 42 U.S.C. § 2000e-16(c). The unlawful failure to hire action described in this Complaint occurred within the United States Citizenship

8

and Immigration Services ("USCIS"), a federal Agency within the Department of
Homeland Security in Washington, D.C.   The USCIS principal place of business
or Agency Headquarters is located in the District of Columbia.

## EXHAUSTION OF ADMINISTRAIVE REMEDIES

40.    Mr. Onyewuchi complied with administrative remedies requirements
pursuant to § 717(c) of Title VII, 42 U.S.C. § 2000e-16(c). This lawsuit is being
commenced within 90 days from December 4, 2007, which was the date of the
final administrative action by the Equal Employment Opportunity Commission on
his case.

## TITLE VII CAUSES OF ACTION

## COUNT I: NATIONAL ORIGIN DISCRIMINATION

41.    Plaintiff incorporates by reference each and every allegation contained in
paragraphs 1 through 40 of this Complaint as if each is set forth specifically and
re-alleged herein.   Mr. Onyewuchi was deprived of his rights under Title VII.
Defendant was aware that its actions against Mr. Onyewuchi violated Title VII.
Unlawful pre-selection and disparate treatment guarantees that job applicants,
such as Mr. Onyewuchi, never enjoy the same equal employment opportunity as
are guaranteed White applicants in this case.   Ms. Patterson understood the
power of pre-selection, which was encapsulated in the following statement she
made in the e-mail referenced in paragraph 34, above:

**"[I]f it were me being interviewed, I'd prefer saving a trip rather than
interviewing with little chance."** Excerpt, Judith Patterson's pre-selection e-

mail to Ms. Muhletaler on May 18, 2004 (sent two days before Mr. Onyewuchi was called to fly out to Texas, within 24 hours, for what would have amounted to a futile interview).    If this type of unlawful employment practice is allowed to stand, the equal employment opportunity guaranteed to all American citizens under Title VII, regardless of race or national origin, becomes illusory for non-Whites, and foreign-born, applicants, such as Mr. Onyewuchi.

42.    Plaintiff was selected and interviewed as one of the six best qualified candidates out of 120 applicants; however, he was neither recommended nor selected despite his overall superior qualification. Instead three all White applicants were recommended, including a White applicant whom the Defendant employer specifically stated was not suitable for the position because her skills set was not a "good fit" for the position.

43.    Plaintiff would show that, because of race and national origin discrimination against him, in violation of Title VII, the employer engaged in deliberate and methodical manipulation of the selection process to ensure that Plaintiff never receives the same meaningful employment opportunity to compete for the position as White applicants.

44.    The Plaintiff would further show that, as part of this manipulation process, the Defendant employer treated Plaintiff less favorably than White applicants and engaged in the following unlawful employment practices, among others, in violation of Title VII:

10

(a) Pre-selecting a White applicant to ensure that the Plaintiff, whose national origin was obtained through pre-employment enquiries and inexplicably recorded in the recommending official's selection material never receives the opportunity, as was afforded the White applicants, to be selected. This pre-selection of a White applicant was intended to deny Plaintiff any meaningful opportunity to compete for the position as White applicants because of unlawful race and national origin discrimination;

(b) Recommending all White applicants, including one whom the employer specifically stated was not suitable for the position because she lacked the skills set required for the position. The recommendation of all White applicants was intended to ensure that, if the pre-selected White applicant was rejected, any one of the recommended White applicants would ultimately be selected, regardless of his or her lack of qualification or suitability for the position;

(c) Deviating, deliberately, from its internal attorney hiring policy. This deliberate deviation allowed the recommending officials to rely upon non-job related criteria in excluding the Plaintiff and choosing all White applicants as the final three candidates for the position. This deviation also resulted in the use of length of legal practice as a criterion rather that immigration experience, which was the focus of the position. This deviation was done in order to justify advancing a White applicant who was determined by the Agency to be unsuitable for the position because she lacked the required immigration experience;

11

(d) Relying on the U.S. News and World Report law school rankings as a selection criterion in a biased manner against the Plaintiff, whereby, Plaintiff who graduated at the top of his class was awarded the worst possible score for law school academic credentials because his law school was allegedly ranked in the fourth tier. Plaintiff further alleges that his academic credentials were grossly understated because his law school is a predominantly Black law school. One of the recommended White applicants who graduated in the fiftieth percentile of her class, from a law school similarly ranked as Plaintiff's, was awarded a higher score than Plaintiff for law school academic credentials. This biased use of law school ranking as a selection criterion is an unlawful employment practice because there is no legitimate business justification for its use as a selection criterion in filling the position at issue. Also, its use has the effect of excluding all, or a substantial number of, African-American graduates of historically Black Colleges and Universities ("HBCU") from employment, because the U.S. News and World Report normally rank HBCU law schools in the fourth tier.

(e) Using ties or familiarity with the location of the position as a selection criterion against the Plaintiff in a discriminatory manner. White applicants who did not meet this criterion were recommended for selection. This biased use of ties or familiarity with location has no legitimate business justification. The use of location in this case, as a selection criterion, is an unlawful employment practice, because there is no legitimate business justification for its use in filling the

position at issue. Also, this unlawful use of ties or familiarity with location has the effect of excluding foreign-born applicants, such as the Plaintiff who was born in Nigeria, from employment;

(f) Recommending a White applicant who was given extremely derogatory performance and ethics-based recommendations by his supervisors while ignoring the stellar recommendations from the Plaintiff's supervisor;

(g) Attributing racially biased stereotypes which were recorded in the selection materials regarding Plaintiff's historically Black law school. This stereotypes resulted in grossly understating applicant's academic achievement from the school while inflating those of similarly situated white applicants who graduated from predominantly White schools;

(h) Excusing a White applicant's failure to follow instructions to call USCIS employees for information about the position while accusing Plaintiff of failing to call and holding such failure to call against plaintiff. In fact, Plaintiff actually followed the instruction and spoke directly to one of the USCIS employees as instructed and notified Ms. Patterson regarding his compliance;

(i) Failing to credit Plaintiff with relevant educational immigration experience gained through specialized training and rejecting the Plaintiff for lack of sufficient immigration experience, even though the Agency internal attorney

13

hiring policy required such crediting of relevant educational experience. However, a White applicant who did not possess the requisite immigration experience for the position was recommended without regard to her lack of crucial immigration experience;

(j) Using lack of face-to-face interview against Plaintiff even though Ms. Patterson suggested telephonic interview after Plaintiff informed her that he had a prescheduled court hearing to gain custody of his children on the proposed interview date. Even though Ms. Patterson swore an affidavit, under penalty of perjury, that Plaintiff never mentioned his child custody hearing as his reason for not being able to fly out to Texas on the proposed interview date, evidence would show that Plaintiff did, indeed, inform Ms. Patterson of the hearing, because she recorded it in the selection material, stating that Plaintiff had to go to court for the custody of his children;

(k) Relying heavily on a very subjective interview and treating Plaintiff less favorably than White applicants for the same or substantially identical interview questions responses. In furtherance of its manipulation of the selection process, Defendant rejected Plaintiff's responses to interview questions as insincere while accepting the same or substantially similar responses from White applicants for the same questions;

14

(l) Embellishing White applicants' qualifications while grossly understating Plaintiff's qualification for the position. This resulted in, among other things, supplying the approving official false information that a White applicant had received an "excellent recommendation" from his supervisors, even though he actually received extremely performance and ethics-based derogatory recommendation from his supervisors;

(m) Accusing Plaintiff of insincerity for providing interview responses, relating to his preference for non-litigation work at USCIS. Evidence would show that Plaintiff's responses to the relevant interview questions were similar or substantially identical to those of the recommended White applicants', which the Defendant accepted as sincere;

(o)     Maintaining an unlawfully discriminatory atmosphere which encourages denigration and perpetuation of negative and racially biased stereotypes against people of African descent, without any repercussions;

44.     Plaintiff would further show that Defendant maintains an unlawful employment pattern and practice which encourages pre-selection of Whites in order to maintain the status quo of Whites' domination of GS-15 attorney positions to the detriment of African-American attorneys.

45.     Defendant's unlawful actions, as has been alleged thus far, warrant this Court's entry of declaratory and injunctive relief against Defendant for unlawful

discrimination in employment against the Plaintiff, on account of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*, and grant any legal and other equitable remedies to Plaintiff as requested in this Complaint.

## COUNT II: DISPARATE TREATMENT RACE DISCRIMINATION

46.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 45 of this Complaint as if each is set forth specifically and re-alleged herein.    Mr. Onyewuchi was deprived of his rights under Title VII. Defendant was aware that its actions against Mr. Onyewuchi violated Title VII.

47.    Plaintiff would further show that the actions complained of in this complaint constitute disparate treatment based on race, in violation of his rights under Title VII.

48.    Plaintiff would further show that he was treated less favorably than White applicants in the evaluated areas where his objective credentials should have mandated favorable ratings.  This disparate treatment was due to low estimation and stereotypes of the abilities of African-Americans and their achievements by the Defendant;

49.    The Plaintiff would further show that the Defendant approving official rubber-stamped the tainted recommendation of the mid-level managers, without

16

any investigation as to the lawfulness of the selection process or the qualifications of the candidates forwarded as the final three candidates.

50.   This blind approval results in unqualified White applicants being advanced while qualified minority applicants, such as Mr. Onyewuchi, never receive a fair chance for advancement.

## PLAINTIFF'S INJURIES

51.   Mr. Onyewuchi was deprived of his statutory rights as guaranteed under 42 U.S.C. 2000-e *et seq.* Defendant's failure to hire Mr. Onyewuchi has caused, and continues to cause, him to suffer significant financial loss, pain, suffering, anxiety and humiliation.   Mr. Onyewuchi's injuries are further exacerbated by Defendant's reckless disregard of his rights and denigration of his hard work and achievements in evaluating him for the position.

52.   As a result of the Defendant's unlawful actions, Mr. Onyewuchi was, and continues to be stymied, in his ability to pursue whatever career choices and advancement he chooses within the Department of Homeland Security, in order to continue to serve his country, as he had planned. The nature of these impediments resulting from Defendant's actions would be adduced at trial.

53.   As a result of Defendant's conduct, Plaintiff is in constant fear of retaliation from the Department of Homeland Security for asserting his rights against USCIS

for its unlawful discrimination. Plaintiff would adduce evidence that justifies his fear at trial.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays this honorable Court for the following relief:

1.      Judgment in Plaintiff's favor and against USCIS for failure to hire Plaintiff for the position of Associate Counsel in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*;

2.      An award of Compensatory damages in an amount to be proven at trial, but in any even not less that $1, 000, 000;

3.      An award to Plaintiff of Back pay with prejudgment interest and associated fringe benefits, including lost wages, bonuses, salary increases and such other benefits, which Plaintiff would have received from the date of his unlawful non-selection to the date of judgment ;

4.      An award of front pay in an amount to be proven at trial, but in any event not less than a period of 15 years or as the Court deems reasonable. The Plaintiff would adduce evidence at trial to show that reinstatement would not be feasible;

5.      An award of reasonable attorney's fees (if any) and costs of processing this suit;

18

6.    Injunction against use of artificial criteria such as U.S. News and World Report Law School Rankings and location in it attorney selection process;

7.    Injunction against using all White selection panels in attorney hiring and against allowing the Agency officials involved in this case as hiring officials;

8.    Discipline of the responsible Agency officials, Judith Patterson and Catherine Muhletaler, for their respective unlawful conduct and ethical violations;

9.    Injunctive relief against the entire Department of Homeland Security against any retaliatory action against Plaintiff for filing this lawsuit;

10.    Any and all other legal and equitable remedies the Court deems appropriate under the circumstances for the Agency officials' malicious acts and reckless disregard of Plaintiff's statutory rights.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Respectfully submitted,

MORRIS ONYEWUCHI, PRO SE
1014 CHESTERFIELD PLACE
MARIETTA, GEORGIA 30064
CELL: (678) 777-9774
HOME: (770) 795-3288

19

H – 360
Rolly

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

MORRIS ONYEWUCHI                    88886

**DEFENDANTS**

HONORABLE EMILIO T. GONZALEZ
DIRECTOR, USCIS, IN HIS OFFICIAL CAPACITY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF      88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT      11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

PRO SE
MORRIS ONYEWUCHI
1014 CHESTERFIELD PLACE
MARIETTA, GA 30064 (678)777977

Case: 1:08-cv-00360
Assigned To : Urbina, Ricardo M.
Assign. Date : 2/29/2008
Description: Employ. Discrim.

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
   Plaintiff

⊘  3 Federal Question
   (U.S. Government Not a Party)

⊗  2 U.S. Government
   Defendant

O  4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | O C. *Administrative Agency Review* | O D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)* | OR | O F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

3

| O  **G.  Habeas Corpus/ 2255** | ⊙  **H.  Employment Discrimination** | O  **I.  FOIA/PRIVACY ACT** | O  **J.  Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  **K.  Labor/ERISA (non-employment)** | O  **L.  Other Civil Rights (non-employment)** | O  **M.  Contract** | O  **N.  Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

TITLE VII OF CIVIL RIGHTS ACT OF 1964: PLAINTIFF UNLAWFULLY DENIED EMPLOYMENT BECAUSE OF HIS RACE AND NATIONAL ORIGIN. . .

42 U.S.C. 2000e et seq.

| **VII.  REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ 1,000,000.+ | Check YES only if demanded in complaint |
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII.  RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  8/29/08    SIGNATURE OF ATTORNEY OF RECORD   _[signature]_, Pro se

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.