**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

)
**MORRIS ONYEWUCHI** )
**1014 CHESTERFIELD PLACE** )
**MARIETTA, GEORGIA 30064** )
**HOME: (770) 795-3288** )
)
**Vs.** )
)
)
**HONORABLE EMILIO T. GONZALEZ** )
**DIRECTOR, USCIS,** )
**IN HIS OFFICIAL CAPACITY** )
**20 MASSACHUSSETTES AVENUE** )
**WASHINGTON, DC 20529** )
)

**RECEIVED**

MAR 0 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**CIVIL ACTION NO.**

**JURY DEMAND.**

---

## AMENDED COMPLAINT OF RACE AND NATIONAL ORIGIN DISCRIMINATION

## NATURE AND BACKGROUND OF THE CASE: DISPARATE TREATMENT RACE AND NATIONAL ORIGIN EMPLOYMENT DISCRIMINATION

1.    This complaint is filed by Morris Onyewuchi ("Plaintiff" or "Mr. Onyewuchi"), an African-American, of Nigerian origin. He petitions this court in this action to obtain full and complete relief and to redress the unlawful employment practices and violation of Title VII of the Civil Rights Act of 1964, as amended, described in this Complaint.

2.    Mr. Onyewuchi is currently employed within the Office of the Principal Legal Advisor ("OPLA"), Immigration and Customs Enforcement ("USICE"), Department of Homeland Security ("DHS"). Prior to his civilian employment, Mr. Onyewuchi served two tours in the United States Army, both as an enlisted

soldier and an officer. He was honorably discharged, twice, after attaining the ranks of Sergeant (E-5) as an enlisted soldier and Captain (O-3) as a commissioned officer.

3.     Mr. Onyewuchi joined the Department of Justice, Immigration and Naturalization Service ("INS"), as an immigration attorney, through the U.S. Attorney General's Honors Program in September 2002. However, in 2003, the INS was abolished and its legal program was reconfigured into the newly created Department of Homeland Security. Two distinct agencies, U.S. Immigration and Customs Enforcement ("USICE") and U.S. Immigration and Citizenship Services ("USCIS") emerged from the INS.

4.     Attorneys from the abolished INS, including Plaintiff, were placed into the two newly created agencies, USCIS or USICE, within the Department of Homeland Security, without any input from these attorneys regarding their preferences on which of the two new agencies they wished to be assigned. This is crucial because of the more favorable employment benefits available at USCIS. For example, in addition to the student loan repayment opportunity available at USCIS only, the USCIS attorney journeyman positions were elevated to, and capped at, GS-15 while USICE attorney journeyman positions remained at GS-14, as they were under INS, for non-management attorneys.

5.     Based on information and good faith belief, a disproportionate number of White attorneys were non-competitively selected for the more favorable USCIS GS-15 positions. Mr. Onyewuchi was assigned to USICE, without any input as to

2

whether he preferred to work for USICE or USCIS or any opportunity to compete for the GS-15 positions.

6.    Although Mr. Onyewuchi was placed with USICE in the newly created Department of Homeland Security, after INS was abolished, his duties as an immigration attorney remained the same.

7.    On or about May 6, 2004, USCIS announced a vacancy, via Agency internal e-mail system, for an experienced attorney position (Associate Counsel), GS-12 to GS-15, in Dallas, Texas.

8.    Applications were solicited from any attorney who wished to transfer at personal expense to Dallas.    The vacancy announcement did not restrict applications from the Dallas local commuter area only.

9.    Mr. Onyewuchi reviewed the vacancy announcement and applied for the position immediately, because he met the qualification requirements and was already performing the immigration attorney duties stated in the vacancy announcement to be the focus of the position.

10.    On May 20, 2004, Ms. Judith Patterson ("Patterson"), who was one of the two recommending officials for the position, called Mr. Onyewuchi at his home in Atlanta, Georgia, and requested that he be available for an interview the next day, May 21, 2004, in Dallas, Texas.

11.    Mr. Onyewuchi informed Ms. Patterson that he would not be able to fly out to Texas the next day, May 21, 2004, because he already had a child custody hearing, to obtain the custody of his children, on the same date.

3

12.    Mr. Onyewuchi was ultimately interviewed by telephone on May 21, 2004, after he returned from his child custody hearing.

13.    On or about June 10, 2004, Ms. Patterson notified Mr. Onyewuchi, via e-mail, that he was not selected for the position.

14.    Ms. Patterson provided a list of the criteria she considered in making her selection in the non-selection e-mail she sent to Mr. Onyewuchi. Ms. Patterson's list included ties or familiarity with the Dallas area as a criterion considered in the selection.

15.    Mr. Onyewuchi discovered from the non-selection e-mail that he was one of the six best qualified candidates, out of 120 applicants, who were interviewed for the position.

16.    Mr. Onyewuchi later learned from documents disclosed during the EEO investigation process that three White attorneys were recommended for the position.

17.    Mr. Onyewuchi further learned that he was not even recommended despite his superior qualifications.

18.    Mr. Onyewuchi made enquiries to determine the reason for his non-selection and whether he was even recommended.

19.    Ms. Patterson initially indicated that she would respond to Mr. Onyewuchi's enquiries after USCIS published the name of the selectee.

20.    However, on or about June 24, 2004, after the selectee's name was published by USCIS Headquarters, Ms. Patterson reneged on her promise to

4

respond to Mr. Onyewuchi's enquiries. She informed Mr. Onyewuchi that she would not respond to Mr. Onyewuchi's enquiries due to deliberative process.

21. Mr. Onyewuchi timely initiated his EEO complaint on July 22, 2004.

22. Mr. Onyewuchi learned through the documents disclosed during the EEO investigation process that the White applicant who was ultimately selected for the position was initially pre-selected on or about May 18, 2004, two days before Ms. Patterson called Mr. Onyewuchi to schedule him for the interview.

23. Mr. Onyewuchi further learned that the co-recommending official for the position, Ms. Catherine Muhletaler ("Ms. Muhletaler"), complained to USCIS Headquarters, via e-mail, regarding Ms. Patterson's improper pre-selection of the ultimate selectee.

24. Evidence will show that USCIS Headquarters instructed that interviews be conducted; however, in light of Defendant's awareness, through Ms. Muhletaler, regarding Ms. Patterson's improper pre-selection of a White applicant, Defendant failed to take any steps to supervise the selection process, in order to ensure that the selection process was fairly administered.

25. Evidence will show that Ms. Patterson, having been instructed to conduct interviews, usurped the selection process and embarked on the manipulation of the entire selection process to ensure that her previously pre-selected candidate would emerge as the ultimate selectee.

26. Evidence will show that Ms. Patterson further manipulated the selection process to ensure that, should her pre-selected candidate drop out or was rejected, only a White applicant would stand the chance of being selected.

5

27.    Mr. Onyewuchi asserts that Ms. Patterson did not want him to be selected for the position because of his race and national origin.

28.    **Mr. Onyewuchi learned through the EEO investigator's report that Ms. Patterson made improper pre-employment enquiries regarding his national origin and source of citizenship, when she called Mr. Onyewuchi's supervisor, Chief Counsel Terry C. Bird (Rtd.), for recommendation. Evidence will show that Mr. Terry Bird gave Mr. Onyewuchi a stellar recommendation for the position, which the recommending officials disregarded.**

29.    **Mr. Onyewuchi learned through the EEO investigator's report that Ms. Patterson recorded his source of citizenship and national origin ("natz'd from Nigeria") on the selection material.    This recording of Plaintiff's national origin and source of citizenship presumes that unlawful national origin discrimination was a factor in his non-selection.  Evidence will show that Defendant unlawfully obtained this information during pre-employment enquiries. Evidence will further show that Ms. Patterson indicated in her affidavit that affirmative action was not a consideration in the selection process.    Therefore, Plaintiff asserts that obtaining and recording of his national origin and source of citizenship on the selection material, during pre-employment enquiries, cannot be justified as a lawful collection of necessary employment information.**

30.    Mr. Onyewuchi further learned that one of the three White applicants who were moved forward as the finalists was determined by the Agency to not be a

6

good fit for the position because she lacked the required skills set, yet she was recommended and Mr. Onyewuchi who was already performing the required duties for the position was not even recommended.

31.    **Mr. Onyewuchi further learned that the recommending officials recorded derogatory remarks on his selection material regarding his predominantly Black law school, but nothing derogatory was remarked about the predominantly White schools.  This derogatory remark directed against a historically Black law school, combined with gross understating of Plaintiff's academic achievement at the same law school, evidences discriminatory animus based on race.**

32.    Evidence will show that "strong academic credentials" were considered, albeit in an unlawfully biased manner against the Plaintiff, as a determinative factor in the selection process.  **Mr. Onyewuchi learned that despite the fact that he graduated at the top of his law school class (#1/191), he was awarded the worst possible score for law school academic credentials in the selection score sheet; however, White applicants who graduated lower in their respective law school classes were treated more favorably for this criterion.**  Plaintiff asserts that this discrimination in a factor considered in the selection process, such as his law school academic credentials, unlawfully corrupted the entire selection process against him, in violation of Title VII.

33.    Mr. Onyewuchi learned that one of the recommended White applicants who graduated at the fiftieth percentile of her law school class received a higher score than Mr. Onyewuchi for law school academic credentials.  Apparently, in

7

the eyes of the recommending officials, graduating number one from a historically Black law school was worthless when compared to graduating at the fiftieth percentile from a predominantly White law school.

34.    Mr. Onyewuchi further learned that one of the Agency recommending officials, deliberately and methodically, deleted the e-mail messages discussing the improper pre-selection of the White applicant who was the ultimate selectee for the position, before disclosing them to the EEO investigator. Mr. Onyewuchi asserts that this gross misconduct was perpetrated to hide the truth about the improper pre-selection and the unlawfully manipulated selection process.

35.    The above facts, among others, to be adduced at trial, are the bases for Mr. Onyewuchi's law suit to vindicate his rights under Title VII of the Civil Rights of 1964, because his non-selection for the position of USCIS Associate Counsel was based on unlawful race and national origin discrimination.

36.    Mr. Onyewuchi asserts that the selection process was unfairly administered and grossly manipulated to favor White applicants, to the detriment of Mr. Onyewuchi.

## JURISDICTION AND VENUE

37.    The jurisdiction of this court is invoked under §§ 717(c) and 706(f) of Title VII, 42 U.S.C. §§ 2000e-16(c) and 5(f), and 28 U.S.C. §§ 1331 and 1343 (4). Venue in this Court is proper under 42 U.S.C. § 2000e-5(f).

## PARTIES

38.    Plaintiff, Mr. Morris Onyewuchi, is an African-American male citizen of the United States, of Nigerian origin, and resident of the state of Georgia.  The

8

Plaintiff is currently employed as an Assistant Chief Counsel with USICE in Atlanta, Georgia. As such, Plaintiff is a federal employee within the meaning of §§ 701(f) and 717(a) of Title VII, 42 U.S.C. § 2000e-(f) and § 2000e-(16) (a).

39.    The Defendant is Honorable Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services ("USCIS"). He is being sued in his official capacity as head of the Agency. As such, he is amenable to suit as provided under § 717(c) of Title VII, 42 U.S.C. § 2000e-16(c). The unlawful failure to hire action described in this Complaint occurred within the United States Citizenship and Immigration Services ("USCIS"), a federal Agency within the Department of Homeland Security in Washington, D.C.  The USCIS principal place of business or Agency Headquarters is located in the District of Columbia.

## EXHAUSTION OF ADMINISTRAIVE REMEDIES

40.    Mr. Onyewuchi complied with all the administrative remedies requirements pursuant to § 717(c) of Title VII, 42 U.S.C. § 2000e-16(c). The Final Agency Decision ("FAD") was issued on May 11, 2006. Mr. Onyewuchi received the FAD on May 18, 2006 and timely initiated his appeal with the Equal Employment Opportunity, within thirty days of the decision, on June 17, 2006.  The Equal Employment Opportunity Commission issued the final administrative decision on this case, and Plaintiff's right to file a civil action (attached), on December 4, 2007. This lawsuit is being commenced within 90 days from the date of the final administrative decision.

# TITLE VII CAUSES OF ACTION

## COUNT I: NATIONAL ORIGIN DISCRIMINATION

41.     Plaintiff incorporates, by reference, each and every allegation contained in paragraphs 1 through 40 of this Complaint as if each is set forth specifically and re-alleged herein.  Mr. Onyewuchi was deprived of his rights under Title VII, 42 U.S.C. § 2000-e *et seq.* Defendant was aware that its actions against Mr. Onyewuchi violated Title VII. Unlawful pre-selection and disparate treatment based on national origin, guaranteed that Mr. Onyewuchi never enjoyed the same equal employment opportunity as were afforded White applicants in this case.  Ms. Patterson understood the exclusionary power of her pre-selection, which was encapsulated in the following excerpt from the e-mail referenced in paragraph 34, above:  **"[I]f it were me being interviewed, I'd prefer saving a trip rather than interviewing with little chance."**  The relevant e-mail was sent two days before Mr. Onyewuchi was called to fly out to Texas, within 24 hours, for what would have amounted to a futile interview.  If this type of unlawful employment practice is allowed to stand, the equal employment opportunity guaranteed to all American citizens under Title VII, regardless of race or national origin, becomes illusory for non-White and foreign-born applicants, such as Mr. Onyewuchi.

42.     Plaintiff was selected and interviewed as one of the six best qualified candidates out of 120 applicants; however, he was neither recommended nor *selected* despite his overall superior qualifications. Instead three all-White applicants were recommended, including a White applicant whom the Defendant

employer specifically stated was not suitable for the position because her skills set was not a "good fit" for the position.

43.     Plaintiff will show that, because of race and national origin discrimination against him, in violation of Title VII, the employer engaged in deliberate and methodical manipulation of the selection process, to ensure that Plaintiff never received the same meaningful employment opportunity to compete for the position as White applicants.

44.     The Plaintiff will further show that, as part of this manipulation process, the Defendant employer treated Plaintiff less favorably than White applicants and engaged in the following unlawful employment practices, among others, to favor White applicants, in violation of Plaintiff's rights under Title VII:

        (a)     Pre-selecting a White applicant to ensure that the Plaintiff, whose national origin and source of citizenship were obtained through pre-employment enquiries and inexplicably recorded in the recommending official's selection material, never received a fair opportunity, as was afforded the White applicants, to be selected. This pre-selection of a White applicant was intended to deny Plaintiff any meaningful opportunity to compete for the position as White applicants, because of unlawful race and national origin discrimination;

        (b)     Recommending all White applicants, including one whom the employer specifically stated was not suitable for the position because she lacked the skills set required for the position. The recommendation of all White applicants was intended to ensure that, if the pre-selected White applicant was

11

rejected, any one of the recommended White applicants would ultimately be selected, regardless of his or her lack of qualification or suitability for the position;

(c)    Deviating, deliberately, from its internal attorney hiring policy. This deliberate deviation allowed the recommending officials to rely upon non-job related criteria in excluding the Plaintiff and choosing all White applicants as the final three candidates for the position. This deviation also resulted in the use of length of legal practice as a criterion rather that immigration experience, which was the focus of the position. This deviation was done in order to justify advancing a White applicant who was determined by the Agency to be unsuitable for the position because she lacked the required immigration experience;

(d)    Relying on the U.S. News and World Report law school rankings as a selection criterion in a biased manner against the Plaintiff. Plaintiff who graduated at the top of his class was awarded the worst possible score for law school academic credentials because his law school was allegedly ranked in the fourth tier. Plaintiff further alleges that, in evaluating "strong academic credentials" as a factor in the selection process, his credentials were grossly understated because his law school is a predominantly Black law school, which is designated as part of the Historically Black Colleges and Universities ("HBCU"). One of the recommended White applicants who graduated in the fiftieth percentile of her class, from a predominant White law school similarly ranked as Plaintiff's HBCU law school, was awarded a higher score than Plaintiff for law school academic credentials. This unlawful disparate treatment and the biased use of law school ranking as a selection criterion against Plaintiff, also,

12

constituted an unlawful employment practice, because there was no legitimate business justification for its use as a selection criterion for the position at issue. Additionally, the use of law school ranking has the effect of excluding all, or a substantial number of, African-American graduates of Historically Black Colleges and Universities from employment, because the U.S. News and World Report normally ranks HBCU law schools in the fourth tier;

(e)    Using ties or familiarity with the location of the position as a selection criterion against the Plaintiff in a discriminatory manner. White applicants who did not meet this criterion were recommended for selection. This biased use of ties or familiarity with location has no legitimate business justification. The use of location in this case, as a selection criterion, is an unlawful employment practice, because there is no legitimate business justification for its use in filling the position at issue. Also, this unlawful use of ties or familiarity with location has the effect of excluding foreign-born applicants, such as the Plaintiff, who was born in Nigeria, from employment;

(f)    Recommending a White applicant who was given extremely derogatory performance and ethics-based recommendations by his supervisors while disregarding the stellar recommendations from the Plaintiff's supervisor;

(g)    Attributing racially biased stereotypes to Plaintiff, which were recorded in the selection materials regarding Plaintiff's historically Black law school. These stereotypes resulted in grossly understating Plaintiff's academic achievements from the HBCU law school while inflating those of similarly situated White applicants who graduated from predominantly White law schools;

13

(h)     Excusing a White applicant's failure to follow instructions to call USCIS attorneys for information about the position while accusing Plaintiff of failing to call and holding such failure to call against Plaintiff.  In fact, Plaintiff actually followed the instructions and spoke directly to one of the USCIS employees as instructed and notified Ms. Patterson regarding his compliance;

(i)     Failing to credit Plaintiff with relevant educational immigration law experience gained through specialized training, and rejecting the Plaintiff for lack of sufficient immigration experience, even though the Agency's internal attorney hiring policy required such crediting of relevant educational experience. However, a White applicant who did not possess the requisite immigration law experience for the position was recommended without regard to her lack of required immigration law experience;

(j)     Using lack of a face-to-face interview against Plaintiff even though Ms. Patterson suggested the telephonic interview after Plaintiff informed her that he had a prescheduled court hearing to gain custody of his children on the proposed interview date. Evidence will show that Ms. Patterson swore an affidavit, under penalty of perjury, that Plaintiff never mentioned his child custody hearing as his reason for not being able to fly out to Texas on the proposed interview date. However, evidence will show that Plaintiff did, indeed, inform Ms. Patterson of the child custody hearing, because she recorded it in the selection material, stating that Plaintiff had to go to court for the custody of his children;

14

(k)     Relying heavily on a very subjective interview and treating Plaintiff less favorably than White applicants for the same or substantially identical interview questions responses. In furtherance of its manipulation of the selection process, Defendant rejected Plaintiff's responses to interview questions as insincere while accepting the same or substantially similar responses from White applicants for the same questions;

(l)     Embellishing White applicants' qualifications while grossly understating Plaintiff's qualifications for the position. This resulted in, among other things, supplying the approving official false information indicating that a recommended White applicant had received an "excellent recommendation" from his supervisors, even though he actually received extremely derogatory performance and ethics-based recommendations from his supervisors;

(m)     Accusing Plaintiff of insincerity for providing interview responses relating to his preference for non-litigation work at USCIS. Evidence will show that Plaintiff's responses to the relevant interview questions were similar or substantially identical to those of the recommended White applicants', which the Defendant accepted as sincere;

(o)     Maintaining an unlawfully discriminatory atmosphere which encourages denigration and perpetuation of negative and racially biased stereotypes against people of African descent, without any repercussions;

44.     Plaintiff will further show that Defendant maintains an unlawful employment pattern and practice which encourages pre-selection of Whites in

15

order to maintain the status quo of Whites' domination of GS-15 attorney positions to the detriment of African-American attorneys.

45.    Defendant's unlawful actions, as has been alleged thus far, warrant this Court's entry of declaratory and injunctive relief against Defendant for unlawful race and national origin discrimination in employment against the Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as requested in this Complaint.

## COUNT II: DISPARATE TREATMENT RACE DISCRIMINATION

46.    Plaintiff incorporates, by reference, each and every allegation contained in paragraphs 1 through 45 of this Complaint as if each is set forth specifically and re-alleged herein.  Mr. Onyewuchi was deprived of his rights under Title VII, because of his race. Defendant was aware that its actions against Mr. Onyewuchi violated Title VII.

47.    Plaintiff will further show that the unlawful actions described in this complaint constitute disparate treatment based on race, in violation of his rights under Title VII.

48.    Plaintiff will further show that he was treated less favorably than White applicants in the evaluated areas where his objective credentials should have mandated favorable ratings.  This disparate treatment was due to low estimation and stereotypes of the abilities of African-Americans and their achievements by the Defendant;

49.    The Plaintiff will further show that the Defendant approving official rubber-stamped the tainted recommendation of the mid-level managers, without any investigation as to the lawfulness of the selection process or the qualifications of the candidates forwarded as the final three candidates.

50.    This blind approval results in unqualified White applicants being advanced while qualified minority applicants, such as Mr. Onyewuchi, never receive a fair chance for advancement.

## PLAINTIFF'S INJURIES

51.    Mr. Onyewuchi was deprived of his statutory rights as guaranteed under 42 U.S.C. 2000-e *et seq.* Defendant's failure to hire Mr. Onyewuchi has caused, and continues to cause, him to suffer significant financial loss, pain, suffering, anxiety and humiliation.  Mr. Onyewuchi's injuries are further exacerbated by Defendant's reckless disregard of his rights and denigration of his hard work and achievements in evaluating him for the position.

52.    As a result of the Defendant's unlawful actions, Mr. Onyewuchi was, and continues to be stymied, in his ability to pursue whatever career choices and advancement he chooses within the Department of Homeland Security, in order to continue to serve his country, as he had planned. The nature of these impediments resulting from Defendant's actions will be adduced at trial.

53.    As a result of Defendant's conduct, Plaintiff is in constant fear of retaliation from the Department of Homeland Security for asserting his rights against USCIS for its unlawful discrimination. Plaintiff will adduce evidence that justifies his fear of such retaliation at trial.

17

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays this honorable Court for the following relief:

1.    Judgment in Plaintiff's favor and against USCIS for failure to hire Plaintiff for the position of Associate Counsel in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*;

2.    An award of Compensatory damages in an amount to be proven at trial, but in any event not less that $1,000,000;

3.    An award to Plaintiff of back pay with prejudgment interest and associated fringe benefits, including lost wages, bonuses, salary increases and other such benefits, which Plaintiff would have received from the date of his unlawful non-selection to the date of judgment;

4.    An award of front pay in an amount to be proven at trial, but in any event not less than a period of 15 years or as the Court deems reasonable. The Plaintiff will adduce evidence at trial to show that reinstatement would not be feasible;

5.    An award of reasonable attorney's fees (if any) and costs of processing this suit;

6.    Injunction against use of artificial criteria such as U.S. News and World Report Law School Rankings and location in its attorney selection process;

7.    Injunction against using all White selection panels in attorney hiring and against allowing the Agency officials involved in this case as hiring officials;

8.    Discipline of the responsible Agency officials, Judith Patterson and Catherine Muhletaler, for their respective unlawful conduct and ethical violations;

18

9.    Injunctive relief against the entire Department of Homeland Security against any retaliatory action against Plaintiff for filing this lawsuit;

10.    Any and all other legal and equitable remedies the Court deems appropriate under the circumstances for the Agency officials' malicious acts and reckless disregard of Plaintiff's statutory rights.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims so triable.

Respectfully submitted,

MORRIS ONYEWUCHI, PRO SE
1014 CHESTERFIELD PLACE
MARIETTA, GEORGIA 30064
HOME: (770) 795-3288

4                                                            0120063943

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

5                                        0120063943

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden

Carlton M. Hadden, Director
Office of Federal Operations

DEC   4 2007

Date

6 .                                    0120063943

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to the following recipients on the date below:

Morris I. Onyewuchi
1014 Chesterfield Pl
Marietta, GA  30064

ATTN:  Carmen H. Walker / MS0800
Department of Homeland Security
245 Murray Ln., SW  Bldg. 410
Washington, DC  20528

Judy Maltby, Chief
EEO Complaints Program Management Office
Department of Homeland Security
Bishop Henry Whipple Federal Building
One Federal Drive, Room G-56C
Twin Cities, MN  55111-4007

DEC   4 2007
_____
Date

_____
Equal Opportunity Assistant